IN THE UNITED STATES DISTRICT COURT
FOR THE NORTHERN DISTRICT OF MISSISSIPPI
DELTA DIVISION

RONALD SPENCER JOHNSON
AND JESSICA JEAN JOHNSON                                                    PLAINTIFFS

V.                                                          CIVIL ACTION NO. 2:10CV074-B-S

SAXON MORTGAGE SERVICES, INC., ET AL.                                       DEFENDANTS

**MEMORANDUM OPINION**

 Presently before the court are the defendants' motions for summary judgment and motion for sanctions. The plaintiffs have not responded to the motions, and the response deadline has passed. Upon due consideration of the motions, exhibits, and supporting and opposing authority, the court is ready to rule.

Factual and Procedural Background

 The plaintiffs, husband and wife Ronald and Jessica Johnson, filed this action on April 27, 2010, against defendants Saxon Mortgage Services, Inc. ("Saxon"), Mortgage Electronic Registration Systems, Inc. ("MERS"), Deutsche Bank National Trust Company, individually and as trustee under Novastar Mortgage Funding Trust, Series 2006-4 ("Deutsche Bank"), Novastar Mortgage Funding Trust, Series 2006-4, Robert Coleman, and Floyd Healy. The plaintiffs assert claims for breach of contract, wrongful foreclosure, breach of the duty of good faith and fair dealing, negligence, gross negligence, and conversion, based on allegations that the defendants foreclosed on the Johnsons' home in Nesbit, Mississippi, without giving proper notice and despite the fact that the Johnsons had met their payment obligations that they assumed under their mortgage note.

 The plaintiffs attached, as Exhibit B to their complaint, photocopies of checks and a list of transactions which at the time they alleged proved their compliance with their payment

obligations from August 2006 through September 2009. The checks appear to have been the subject of tampering. For instance, some checks contain two different check numbers; certain check numbers are repeated, though the information on the checks varies; and correction fluid appears to have been used to alter some of the checks. The plaintiffs now acknowledge that someone has clearly tampered with the checks, though both deny any involvement with the tampering. The plaintiffs allege that, after signing a "Release of Records" form, they received these documents from Susan Mullins, a person they assert was an assistant manager at Trustmark Bank's Horn Lake, Mississippi, branch. Trustmark's Rule 30(b)(6) representatives revealed the following: first, that Trustmark has no record that a Susan Mullins has ever been employed by the bank; second, that Trustmark does not employ any assistant managers in its Horn Lake office; third, that Trustmark provides copies of cancelled checks to customers without requiring any particular form; fourth, that Trustmark's records do not indicate that the bank prepared the "Release of Records" form produced by the plaintiffs; fifth, that it typically takes Trustmark a week – not six weeks as indicated by Mrs. Johnson – to provide copies of cancelled checks to a customer; sixth, that Trustmark can provide copies of cancelled checks dating back seven years – thus, contradicting Mrs. Johnson's assertion that the bank did not have copies of her checks from 2006 and 2007; and finally, that Trustmark did not prepare the documents in Exhibit B to the plaintiffs' complaint.

The plaintiffs also initially asserted that they were in contact with Agent Theresa Ramsey of the Federal Bureau of Investigation because Ramsey was investigating alleged criminal activity in which Trustmark employees stole funds from the Johnsons' account, covering the theft by making it appear as though the stolen funds were paid to defendant Saxon Mortgage

2

Company. The plaintiffs stated in their depositions and in a July 14, 2010, letter to the magistrate judge assigned to this case that a person purporting to be Agent Ramsey informed Mrs. Johnson that she and her husband should attend the sentencing of the Trustmark employees at the federal courthouse in Jackson, Mississippi, on December 8, 2010, and that afterwards, they could negotiate a settlement over the funds stolen from their account. The plaintiffs even provided a case number to the magistrate judge: #28:13-cr-00138-NBB-FRA.[1] The plaintiffs allege that they drove to Jackson to attend the hearing only to learn that no such hearing was on the docket. The plaintiffs contend that, at that point, they drove to the FBI's Jackson office, where they met with Vicki Reed, an agency employee, and learned that someone must have been impersonating Agent Ramsey. The plaintiffs apparently learned at this alleged meeting that the real Agent Ramsey had no knowledge of the Johnsons, their claims, or any investigation into wrongdoing on the part of Trustmark or its employees.

The plaintiffs have acknowledged that the only evidence they have that they made their mortgage payments and were not in default at the time of the foreclosure is the testimony of Mrs. Johnson that she recalls making the payments. The payment history on the plaintiffs' loan from Saxon and the plaintiffs' bank statements from Trustmark reveal that the plaintiffs made only two mortgage payments during 2008 – a payment to Saxon of $2600.00 on February 22 and

---

[1] It is safe to say that no such case number exists in the United States District Court for the Southern District of Mississippi – the federal court which has jurisdiction over Jackson. The first number represents the division. The Southern District has five divisions – not twenty-eight. The second number represents the year the case was filed. It is of course an impossibility, without employing the use of a time machine, to file a case in 2013. The next portion of the number, "cr-00138," is at least theoretically plausible. The number represents that the action is the 138th criminal case filed in that particular division in that particular year. The first letters represent the district judge assigned to the case. "NBB" are the initials of the undersigned Northern District judge. The final letters represent the magistrate judge assigned to the case. No magistrate judge in the Southern or Northern Districts of Mississippi has the initials "FRA," though one Southern District magistrate comes close with the initials "LRA."

$4500.00 on June 2. The plaintiffs were in default on their mortgage in the amount of $9,197.30 by August 7, 2008. On that date, Saxon asserts that it sent the plaintiffs by certified, first class mail a notice of default and intent to accelerate, advising that the plaintiffs must cure their default within thirty days, or Saxon would accelerate the loan and foreclose. Saxon originally initiated foreclosure proceedings in April 2008 but halted the proceedings due to the plaintiffs' attempt to cure their default through a repayment plan. The first and only payment under this repayment plan was the $4500.00 payment made on June 2, 2008, which Mrs. Johnson denies making.

The plaintiffs assert that they never received the notice of default and were not aware of the foreclosure until January 12, 2009, when they received an eviction notice. Saxon, through its foreclosure counsel, defendants Floyd Healy and Robert S. Coleman, Jr., asserts that it properly noticed the foreclosure sale and sold the property to defendant Deutsche Bank on November 12, 2008, for $140,082.92.

Three weeks after the foreclosure sale, on December 3, 2008, the property caught fire twice in the same day. The second fire resulted in a complete loss. Authorities interviewed the plaintiffs, and the plaintiffs acknowledge that Mrs. Johnson took and failed a computer voice stress analyzer test. No criminal charges have been brought in regard to the incident. The plaintiffs' insurance carrier, State Farm, denied proceeds because the plaintiffs no longer owned the property at the time of the fire. State Farm did, however, pay the plaintiffs $1500.00 per month for rent for ten months after the fire.

The plaintiffs assert that despite the November 2008 foreclosure sale, the total property loss on December 3, 2008, and the January 2009 eviction notice, they continued to make their

monthly mortgage payments to Saxon through September 2009. These alleged payments, however, are not reflected in the records of Saxon or Trustmark.

The plaintiffs filed the present action on April 27, 2010, through their counsel at the time. Upon reviewing the documents the plaintiffs attached to the complaint as Exhibit B, i.e., the alleged evidence of mortgage payments, defense counsel asserts that she noted the aforementioned discrepancies among the checks and further alleges that the endorsement on the back of the checks does not resemble the actual Saxon endorsement. Defense counsel then subpoenaed the plaintiffs' bank records from Trustmark and provided those records to the plaintiffs through their counsel on June 16, 2010. The bank records, which are now part of the record before the court, do not comport with the documents in the complaint's Exhibit B. The plaintiffs' lawyers moved to withdraw and were permitted to withdraw by order of this court on June 25, 2010. The defendants requested that the plaintiffs voluntarily dismiss their case. The plaintiffs refused and now proceed *pro se*.

All defendants have moved for summary judgment and for Rule 11 sanctions.[2] The plaintiffs have responded to none of the motions, and the response deadlines have passed. The court will, nevertheless, address the merits of the defendants' motions.[3]

---

[2]Defendants Coleman and Healy moved for summary judgment separately from the corporate defendants but subsequently joined the latter's motion, as well as the motion for sanctions.

[3]The court will not grant a dispositive motion on the ground that it is unopposed but must instead examine the merits of the motions. *See* L. U. Civ. R. 7(b)(2)(E); *Hetzel v. Bethlehem Steel Corp.*, 50 F.3d 360, 362 (5th Cir. 1995) (noting the court's disapproval of the practice of granting summary judgment motions as unopposed) (citing *Hibernia Nat'l Bank v. Administracion Cent. Sociedad Anonima*, 776 F.2d 1277, 1279 (5th Cir. 1985) ("A motion for summary judgment cannot be granted simply because there is no opposition, even if failure to oppose violated a local rule.")).

Standard of Review

A party is entitled to summary judgment "if the pleadings, depositions, answers to interrogatories, and admissions on file, together with the affidavits, if any, show that there is no genuine issue as to any material fact and that the moving party is entitled to judgment as a matter of law." Fed. R. Civ. P. 56(c). On a motion for summary judgment, the movant has the initial burden of showing the absence of a genuine issue of material fact. *Celotex Corp. v. Catrett*, 477 U.S. 317, 325 (1986). If the movant makes such a showing, the burden then shifts to the non-movant to "go beyond the pleadings and by . . . affidavits, or by the 'depositions, answers to interrogatories, and admissions on file,' designate 'specific facts showing that there is a genuine issue for trial.'" *Id.* at 324 (quoting Fed. R. Civ. P. 56(c), (e)). Before finding that no genuine issue for trial exists, the court must first be satisfied that no rational trier of fact could find for the non-movant. *Matsushita Elec. Indus. Co., Ltd. v. Zenith Radio Corp.*, 475 U.S. 574, 587 (1986).

"[T]he issue of fact must be 'genuine.' When the moving party has carried its burden under Rule 56(c), its opponent must do more than simply show that there is some metaphysical doubt as to the material facts." *Id.* at 586. "Unsubstantiated assertions, improbable inferences, and unsupported speculation are not sufficient to defeat a motion for summary judgment." *Brown v. City of Houston, Tex.*, 337 F.3d 539, 541 (5th Cir. 2003). Further, self-serving "affidavit or deposition testimony setting forth ultimate or conclusory facts and conclusions of law are insufficient to defeat a motion for summary judgment." *Clark v. America's Favorite Chicken Co.*, 110 F.3d 295, 297 (5th Cir. 1997).

The court must render summary judgment in favor of the moving party if "there is no legally sufficient evidentiary basis for a reasonable jury to find for that party on that issue."

*Reeves v. Sanderson Plumbing Products, Inc.*, 530 U.S. 133, 135 (2000).  The Supreme Court has cautioned, however, that the ruling court must not encroach upon the functions of the jury.  The Court stated in *Reeves* as follows:

> [T]he court must review all of the evidence in the record, drawing all reasonable inferences in favor of the nonmoving party, but making no credibility determinations or weighing any evidence.  The latter functions, along with the drawing of legitimate inferences from the facts, are for the jury, not the court.  Thus, although the court should review the record as a whole, it must disregard all evidence favorable to the moving party that the jury is not required to believe.

*Id.* (citations omitted).  "Summary judgment, although a useful device, must be employed cautiously because it is a final adjudication on the merits." *Jackson v. Cain*, 864 F.2d 1235, 1241 (5th Cir. 1989).

Analysis

It is uncontested that the plaintiffs' only evidence that they were not in default and that their property should not have been foreclosed upon is Mrs. Johnson's recollection that she made the mortgage payments well into 2009.  Mrs. Johnson does, however, acknowledge that her recollection and Exhibit B to the complaint are contradicted by the bank records.  The following colloquy took place at Mrs. Johnson's deposition:

> Defense Counsel:  Let's look then at Exhibit 4 to the deposition which is your Exhibit B to the Complaint.  And let's flip to the very last page which is – which purports to be an image showing your payment from September 2009 to Saxon Mortgage; is that correct?
>
> Mrs. Johnson:  Yes.
>
> Q.  Do you believe that this document of page 23 of Exhibit B to the Complaint is an accurate reflection of the payment that you made to Saxon Mortgage in September 2009?
>
> A.  Not an accurate one.

Q. Okay. And what's inaccurate about it?

A. From comparing it to the bank statements that you guys obtained, the whole check is inaccurate basically.

Q. And do you believe that the records produced by the bank and that we in turn provided to your counsel are an accurate reflection of the payments that were made to Saxon Mortgage?

A. Yes.

Q. Okay. And so it is your contention then as we sit here today that these documents that are included as Exhibit B to your complaint do not accurately reflect your payments to Saxon Mortgage?

A. Yes.

Q. Do you have any explanation for the discrepancies between the information contained in Exhibit B to your complaint and these records that were produced from Trustmark Bank?

A. No, I do not.

Though Mrs. Johnson stated at her deposition that she has no explanation for the discrepancies between Exhibit B and the bank records, to the contrary, the plaintiffs have in fact offered an explanation in the form of a long, meandering, and colorful story about bank employees' concerted criminal activity of which there is no record, criminal litigation of which there is no record, an FBI investigation which is completely refuted by the FBI, an impersonation of an FBI agent, and records allegedly obtained from bank employees of whom the bank has no record of employment and through means that are contrary to the uncontested standard procedures of the bank. The story does not end with these tales of intrigue, conspiracy, false identities, and crimes against the plaintiffs – a story completely unsupported by the record and one that only the most unreasonable juror would consider anything but fiction. The case is

no less interesting as it shifts to non-fiction three weeks after the foreclosure sale when the plaintiffs' house catches fire. Twice. In one day.

"When opposing parties tell two different stories, one of which is blatantly contradicted by the record, so that no reasonable jury could believe it, a court should not adopt that version of the facts for the purposes of ruling on a motion for summary judgment." *Scott v. Harris*, 550 U.S. 372, 380 (2007). The Supreme Court's directive in *Scott* could hardly be more applicable than in the present case.

It is undisputed that the only evidence the plaintiffs can present to the court in support of their case is the recollection of Mrs. Johnson that she made the mortgage payments. While her testimony is admissible evidence and while the court will not make credibility determinations in ruling on a summary judgment motion, it is well settled that self-serving "affidavit or deposition testimony setting forth ultimate or conclusory facts . . . are insufficient to defeat a motion for summary judgment." *Clark v. America's Favorite Chicken Co.*, 110 F.3d 295, 297 (5th Cir. 1997).

Mrs. Johnson's recollection admittedly conflicts with every piece of evidence in the record before this court with the singular exception of Exhibit B to the complaint, which the plaintiffs themselves now acknowledge is not credible. The record reflects the simple fact that the plaintiffs were in default on their mortgage and that the defendants properly foreclosed. The plaintiffs' claim of wrongful foreclosure cannot, therefore, survive summary judgment.

As for the plaintiffs' contention that they did not receive notice of the default on their loan and Saxon's intent to accelerate and foreclose, the court notes that the deed of trust does not require that the plaintiffs actually receive the notice of default. The deed of trust states that

9

"[a]ny notice to Borrower in connection with this Security Instrument shall be deemed to have been given to Borrower when mailed by first class mail or when actually delivered to Borrower's notice address if sent by other means." The plaintiffs do not dispute that the default notice was sent by certified, first class mail to their proper address – only that they did not receive it. The plaintiffs' assertion that they were unaware of the foreclosure until the January 2009 eviction notice is repeatedly contradicted by the record, as well, but no determination on that issue is necessary in light of the unequivocal terms of the deed of trust.

The individual trustee defendants, Robert Coleman and Floyd Healy, have presented valid, meritorious arguments that they are entitled to summary judgment on the ground that trustees in a foreclosure owe no duties to the plaintiffs "'until called upon to foreclose,' at which point the duties [are] 'limited to conducting a fair and impartial sale according to law and the contract between the parties.'" *Neely v. Regions Bank*, 262 Fed. Appx. 630, 633 (5th Cir. 2008) (citing K.F. Boakle, Miss. Real Estate Foreclosure Law § 2:3 (2d ed. 2006) and *Wansley v. First Nat'l Bank of Vicksburg*, 566 So. 2d 1218, 1223 (Miss. 1990) ("A trustee under a deed of trust does not assume the important obligations which in some instances are cast upon a trustee by operation of law. The trustee of a trust deed is not a trustee in the strict sense of the word. The role of such a trustee is more nearly that of a common agent of the parties to the instrument.")).

The plaintiffs have not alleged that the trustee defendants conducted an unfair sale but that they should have halted the sale when notified that the property had been wrongfully foreclosed upon as evidenced by the now admittedly bogus checks from Exhibit B to the

complaint. The duties of the trustee do not extend "beyond the foreclosure sale,"[4] and the plaintiffs have articulated no breach of a duty owed to them by the trustee defendants.

The plaintiffs' negligence claim and their claim of a breach of the duty of good faith and fair dealing against the trustee defendants must fail on these grounds. The claims likewise fail, along with all of the plaintiffs' other claims, due to the complete lack of evidentiary support, as set forth in the analysis above.

## Motion for Sanctions

The defendants also move for sanctions against the plaintiffs pursuant to Rule 11 of the Federal Rules of Civil Procedure. Rule 11 provides in pertinent part as follows:

> By presenting to the court a pleading, written motion, or other paper – whether by signing, filing, submitting, or later advocating it – an attorney or unrepresented party certifies that to the best of the person's knowledge, information, and belief, formed after an inquiry reasonable under the circumstances . . . the factual contentions have evidentiary support or, if specifically so identified, will likely have evidentiary support after a reasonable opportunity for further investigation or discovery . . . .

Fed. R. Civ. P. 11(b)(3).

After reviewing the documentary and testimonial evidence in this case, the court finds that the plaintiffs have violated Rule 11. As outlined in detail in the above sections addressing the defendants' motions for summary judgment, the plaintiffs contentions are wholly without evidentiary support. Indeed, it would appear that the plaintiffs may have perpetrated an elaborate fraud upon the defendants and this court, but the court makes no official finding in that regard.

---

[4]*Id.*

The defendants request a sanction in the form of reasonable attorneys' fees and expenses in litigating this case, and the court finds that the request should be granted. The court notes that there is no evidence nor allegations that the plaintiffs' original attorneys in this action were aware of any wrongdoing on the part of the plaintiffs. In fact, the above-referenced July 14, 2010, letter written by the plaintiffs to the magistrate judge assigned to this case reveals that the plaintiffs' counsel came to believe, as the facts of this case developed, that the plaintiffs had tampered with the evidence and misrepresented various allegations throughout this litigation. Upon learning of this information, counsel instructed the plaintiffs to voluntarily dismiss their case, which the plaintiffs refused to do. Counsel then promptly moved to withdraw from the case, and the motion was granted. The court, therefore, finds no improper action on the part of the plaintiffs' counsel. Rule 11(c), however, permits the court to "impose an appropriate sanction on any attorney, law firm, or *party* that violated the rule or is responsible for the violation." Fed. R. Civ. P. 11(c)(1) (emphasis added).

The court "must impose the least severe sanction on attorneys and parties who violate Rule 11." *Mercury Air Group, Inc. v. Mansour*, 237 F.3d 542, 548 (5th Cir. 2001); Fed. R. Civ. P. 11(c)(4). The Fifth Circuit "has affirmed a district court's determination that the least severe sanction for a lawsuit that is wholly frivolous is the imposition of reasonable attorneys' fees and expenses." *Id.* (citing *Granader v. McBee*, 23 F.3d 120, 124 (5th Cir. 1994)). The court finds that such a sanction is warranted and is the least severe available in this case. The defendants may submit to the court affidavits and any other relevant documents supporting their request for attorneys' fees and expenses in litigating this case within thirty days of this date.

Conclusion

For the foregoing reasons, the court finds that the defendants' motions for summary judgment should be granted. The court further finds that the defendants' motion for sanctions should be granted. A separate order in accord with this opinion shall issue this day.

This, the 3rd day of November, 2011.

      /s/ Neal Biggers
**NEAL B. BIGGERS, JR.**
**UNITED STATES DISTRICT JUDGE**